## JOEL CHARLES *vs.* SAMUEL B. CLAGETT.

A deed reciting the indebtedness of the grantor to certain named creditors, and his desire to secure the payment thereof, and conveying certain real estate to a trustee in trust, that if the grantor should pay the said indebtedness within one year, then the trustee should release and reconvey the property to the grantor ; but if he should fail so to pay said debt, the trustee should sell the property, and apply the proceeds: 1st, to pay the expenses of the trust; 2nd, the said debt; and 3rd, the surplus, if any, to the grantor; was decided by the court below not to be a mortgage within the act of 1846, *ch.* 271, and therefore not void for the want of the affidavit required by that act ; and upon appeal this decision was affirmed by a divided court.

Charles *vs.* Clagett.

APPEAL from the Circuit Court for Washington county.

This was an *attachment on warrant*, sued out of the circuit court for Washington county, by the appellant, on the 15th of September 1851, to affect the lands and tenements, goods, chattels and credits, of one John A. Grimes, a non-resident debtor, returnable to the November term 1851, of said court. This attachment was levied on the 18th of September 1851, upon certain real estate in Washington county, as the property and estate of said Grimes. At the return term Samuel B. Clagett, the appellee, filed his petition in the cause, claiming the property under a deed of trust from said *Grimes and wife*, to him, executed and delivered on the 1st of May 1851, and by said Clagett recorded among the land records of Washington county, on the 6th of May 1851, and prayed to be admitted to prosecute his claim and protect said property from a judgment of condemnation. A copy of the deed referred to was filed with this petition, as follows:

"This indenture made this first day of May 1851, between John A. Grimes, and Ann E. Grimes his wife, of Georgetown, in the District of Columbia, of the first part; Samuel Clagett of Washington county, in the State of Maryland, of the second part; and David and Hezekiah Clagett of Washington county, in the State of Maryland, of the third part: Whereas the said Grimes is indebted to the said David and Hezekiah Clagett, in the sum of $6000; and whereas the parties of the first part are anxious to secure the payment of the same: now this indenture witnesseth, that the said parties of the first part, for and in consideration of the premises, and of the sum of one dollar, current money, to them in hand paid by the said Samuel Clagett, at or before the' ensealing and delivery of these presents, the receipt of which is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, and conveyed, and by these presents do grant, bargain, sell, alien, enfeoff, and convey unto the said Samuel Clagett, his heirs and assigns, all the following described mill property, lands and hereditaments, lying and being in Washington county, in the State of Maryland, that is to say"—then

follows a description of the property by metes and bounds—
"to have and hold the said granted hereditaments unto the said
Samuel Clagett, his heirs and assigns in trust forever, if the
said John A. Grimes shall pay the party or parties entitled, the
sum of $6000, within one year after the date of these pre-
sents, then the said Samuel Clagett and his heirs, as the case
may require, shall release and reconvey the said granted here-
ditaments, to the said John A. Grimes, his heirs and assigns,
discharged of the lien hereby created; but if the said John A.
Grimes shall fail to pay the debt above mentioned, or such
part thereof as may remain unpaid within one year after the
date of these presents, then" the trustee after notice by ad-
vertisement, should have power to sell the property, at such
time and upon such terms as he should deem reasonable and
for the interest of all parties concerned, and such sale to re-
peat "as often as may be necessary to satisfy the objects of
this trust; and on full payment of the purchase money to
convey the premises sold to the purchaser," and "the pro-
ceeds of any and every such sale to apply, in the first place,
to defray the reasonable expenses of this trust; secondly, to
pay to the party or parties entitled, whatever shall remain
owing of the debt aforesaid, for principal, interest, or expen-
ses; and lastly, any surplus to pay over to the said John A.
Grimes, his executors, administrators, or assigns." The
deed then contains a general warranty of title by Grimes to
the trustee, and was acknowledged in due form by the gran-
tor and his wife.

Upon this petition the court admitted said Clagett to pros-
ecute his said claim, and ordered the plaintiff to reply to the
said petition, which the latter did by showing that the deed
under which Clagett claimed was a deed of mortgage; and
no affidavit having been made either by the trustee or his
*cestui que trusts,* that the consideration therein set forth was
true and *bona fide,* as required by the act of 1846, ch. 271,
and its supplements, the said deed was void.

The parties then, for the trial of the issue, filed an agreed
statement of facts, in which the non-residence of Grimes, the

debt on which the attachment was issued, the dates of the deed, and its recording as above stated, and that the property levied on was embraced in it, were admitted; and the case was submitted thereupon to the court for its opinion, as follows: "If the court should be of opinion that the said instrument of writing required, in order to be valid, the affidavit of said Clagett or any other person, prescribed by the said act of Assembly or its supplements, then the court is to enter judgment of condemnation for the plaintiff, otherwise judgment to be entered for the said claimant, Samuel B. Clagett."

The court (PERRY, J.,) gave judgment for the claimant, from which the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, MASON and TUCK, J.

*Wm. Price,* for the appellant.

There is but one point in the case, and that is, is the deed of the 1st of May 1851, a mortgage within the meaning of the act of 1846, ch. 271, and its supplements? If it be a mortgage, the act makes it void, if the oath be omitted. We insist that it is a mortgage, and therefore comes within the provisions of this act. *Coote on Mortgages,* 170, 150. (69 *Law. Lib.,* 54, *Note A.*) 18 *Pick.,* 303, 304, *Lanfair vs. Lanfair.* 1 *Metcalf,* 117, 119, *Nugent vs. Riley.* 6 *Hill, N. Y. Rep.,* 143, *Stewart vs. Hutchins.* 3 *Watts,* 188, *Colwell vs. Woods,* and the authorities there cited by Kennedy, J. 3 *Pick.,* 484, *Eaton vs. Whiting,* a case directly in point. See also 9 *Searg. & Rawle,* 434, *Stoever vs. Stoever.* 7 *Watts,* 372, *Rankin vs. Mortimere.* 1 *Rand.,* 306, 310, *Chowning vs. Cox.* 7 *Johns. Ch. Rep.,* 40. 7 *Cranch,* 218. 4 *Kent's Com.,* 146, *(Note.)* 5 *G. & J.,* 86, *Hicks vs. Hicks.* 6 *G. & J.,* 281, *Dougherty vs. McColgan.* The case of *Turner vs. Bouchell,* 3 *H. & J.,* 99, shows that the right to redeem gives character to the deed, and makes it a mortgage. The act of 1846, ch. 271, is not penal nor is it in derogation of common right. The essentials of a mortgage are that it must

be a security for the payment of money, and contain an equity of redemption. *Lewin on Trusts*, 24 *Law Lib.*, 54, 55. 1 *Md. Rep.*, 225, 234, 411, 414.

*Alexander Neil, Jr.*, and *Daniel Weisel*, for the appellee.

1st. The deed is a deed *of trust* and not a *mortgage*. 1 *Coote on Mortgages*, 1, 5.  (69 *Law Lib.*)  2 *Crabb on Real Property*, sec. 2202.  (55 *Law Lib.*)  2 *Cruise's Digest*, *ch.* 1, *sec.* 11.  *Lewin on Trusts*, 15.  (24 *Law Lib.*)  1 *Term. Rep.*, 378, 383, *Birch vs. Wright*.  2 *Story's Eq.*, sec. 1013, *and note* 2.  4 *Kent's Com.*, 134.  To constitute a mortgage: 1st. The deed must be made *directly* to the creditor. 2nd. The mortgagee may enter upon default.  Can the trustee do this?  3rd. The mortgagee may maintain ejectment on default.  4th. The mortgagor is entitled to rents and profits, and 5th, the mortgagor may execute leases.  *Coote on Mortgages;* 400.  Deeds may be drawn to operate as a security, which are not deeds of mortgage.

2nd. Deeds of trust are not within the language or meaning of the act of 1846, ch. 571, or its supplements; and the affidavits required by those acts is not necessary to their validity.  *Lewin on Trusts*, 44.  (24 *Law Lib.*)  *Act of* 1846, *ch.* 271, *secs.* 1, 2, and its supplements, being the acts of 1847, *ch.* 305, and 1849, *ch.* 199.  These acts are in restraint of common right, and will not be extended by construction. They use technical terms, which must receive a technical construction.

The cases cited by the counsel for the appellant, were all cases in which the deed was to the creditor himself, with power to sell.  See also the act of 1825, ch. 203.

Mason, J., delivered the following opinion:

The present appeal comes before us upon an agreed statement of facts.  It appears that the appellant, Charles, sued out an attachment against John A. Grimes, as a non-resident debtor, and caused the same to be laid upon certain real estate in Washington county as the property of the said Grimes.

The appellee, to defeat said attachment, interposes a deed executed to him by the debtor, prior to the issuing of the attachment, and which was designed to embrace the same property.   The single question submitted to us for adjudication is, whether this deed is embraced within the purview of the act of 1846, ch. 271, and its supplements?   Those acts require that an affidavit shall be endorsed upon every *deed of mortgage and bill of sale,* to make them valid, by the mortgagee or grantee, that the consideration therein set out is true and *bona fide.*   No such affidavit accompanies the present deed, and the inquiry then to which we are to address ourselves is, can this deed be sustained without such affidavit? The features of the deed which indicate its character, and which, it is contended, take it out of the operation of the statute, are as follows:   Instead of conveying the property directly to the creditors, whose debt it was designed to secure, the deed interposes the appellee as trustee, to sell and convey the property in default of payment by the grantor; and provides further, that if the said Grimes shall pay the debt when due, then the trustee is to reconvey the property to him, discharged of the lien created by the deed; in other words, it contains the redemption clause.

It must be conceded, that but for the interposition of the trustee in this case, there could be no question as to the character of the deed.   It would clearly be a simple mortgage, and as such, within the law.

It is a well established principle of law, in construing acts of Assembly, that the intention and meaning of the legislature are to be collected from the law itself, and the circumstances which produced it.   *Beall vs. Harwood,* 2 *Har. & Johns.,* 171. The design of the act of Assembly which we are now called upon to interpret, is obvious.   Its purpose manifestly was, to prevent conveyances for pretended considerations in fraud of *bona fide* creditors, and there can be no doubt but that the deed before us comes within the mischief which the law intended to prevent.   But it has been urged upon us, with great force and ability, by the appellee's counsel, that inas-

much as the legislature has used a *technical term* to convey its meaning, we must therefore give to it a technical interpretation. In other words, the term *mortgage* has a special and limited meaning in the eye of the law, and we must therefore presume that the legislature intended to give to it that *special and technical* meaning, when it employed it in the act in question. To this doctrine I cannot assent as an universal rule, however well supported it may appear to be by argument and authority. In this connection I do not deem it necessary to review the nice distinctions drawn by counsel between mortgages and deeds of trust, or how far, if ever, they will be treated as synonymous terms. This is a case *sui generis*, and must depend for its proper adjudication, more upon general principles of law and the rules of common sense, than upon any adjudged cases. It is our duty to reach the meaning of the legislature, and in doing so, if necessary, we must break through mere technicalities, and where the object of the statute is the suppression of a mischief, as in the present instance, the construction should be liberal, fully to effect the end if possible. *Lucas vs. McBlair*, 12 *Gill and Johns.*, 17. And in the case of *Young vs. The State*, 7 *Gill and Johns.*, 260, the court uses this emphatic language: "Substance, and not form, is to control the construction of legislative enactments." So liberal have been our judicial constructions of acts of Assembly, in similar cases, that the court say, in the case of *Patterson vs. Wilson*, 6 *Gill and Johns.*, 502, that "a case within the letter of a statute, and not within its spirit, is without the statute;" and there seems to be greater reason for the truth of the converse of the proposition, viz., that *a case not within the letter of a statute, and within its spirit, is within the statute.*

The same principle is more fully recognised and enforced in a previous case, *The State vs. Boyd*, 2 *Gill and Johns.*, 374. "Statutes are sometimes," the court say, "extended to cases not within the letter of them, and cases are sometimes excluded from the operation of statutes, though within the letter, it being an acknowledged rule in the construction of statutes, that the

intention of the makers ought to be regarded." In that case the learned chief justice permits himself, in imagination, to cite before him the members of a past legislature, and to interrogate them as to the purposes they had in view in passing a particular law. Cannot we do the same? If we could, would there be any doubt as to the response we would receive? Not a reason can be assigned why the law of 1846 should not extend to a deed like the present, as well as to a simple mortgage. In the case last cited, the court add, as a test whether a case is embraced within the meaning of a statute or not, that "if it is *within the mischief intended to be remedied*, there is no rule of construction which excludes it from the operation of the act." Upon this *dictum*, according as it does with my own notions, I am willing to rest this case. If a creditor is required to swear to the consideration set out in a mortgage, when made directly to himself, why should he not do so when the conveyance is made to another for his benefit? If the prevention of fraudulent conveyances be the design of the law, as it clearly is, why should its operation be confined to one class of fraudulent conveyances, and not to another? Would not this court be conniving at an evasion of the law, by permitting debtors to commit indirectly the mischief which the legislature designed to prevent? See also *Milburn vs. State*, 1 *Md. Rep.*, 17.

It is by no means my purpose to intimate that the instrument before us, would be regarded as a mortgage for every purpose—indeed it is not necessary even to say that it is a mortgage for any purpose. My design is merely to say, that in my opinion it is embraced within the meaning of the act, call it by whatever name you please. It is contended, that if this deed be a mortgage under the act of 1846, it must also be treated as one under the act of 1825, ch. 203, sec. 3, and subject to all the incidents of that law. This by no means follows. The legislature may have designed to have embraced such a case in one act, and to have excluded it from the operation of the other. But we are not called upon to interpret the act of 1825. It has no application to the point

involved in the present case. Nor is it necessary for the purposes of this question, to investigate the learning of the courts upon the subject of the distinctions, incidents and peculiarities of deeds of trusts and mortgages. We are called upon to construe an act of Assembly, and this must be done upon the broad principles of common sense and reason. Whether the legislature designed to embrace this deed in the terms of the law, is one question, the relative and conflicting rights of *cestui que trusts*, mortgagees, creditors, and all other parties interested, are distinct questions. We have to settle the first and not the latter, and in determining the one, we need not necessarily pass upon the others. It is to be remarked in this connection, that the words of the act are peculiar. The legislature has not said *mortgages*, but has used the expression "*deeds of mortgage*," which clearly, to my mind, repels the idea that the legislature intended to confine the law to cases of strict, technical mortgages, but designed to embrace all conveyances in the *nature of a mortgage*. If the present deed be not technically *a mortgage*, it may nevertheless be *a deed*, in the nature of a mortgage.

I am nevertheless constrained to admit, that there are questions arising out of this subject which are not free from difficulty. This difficulty, however, relates rather to the extent to which the principle is to be carried in its application to future cases, and by whom the affidavit in such cases is to be made. Though we are not required to decide more than the present appeal, yet I have no hesitation in saying, that I would not extend the principle which has been contended for, to general and absolute deeds of trust for the benefit of creditors, without the equity of redemption. In such cases the grantor parts, without any reservation, with all control over his property, until the purposes of the trust have been subserved. But whenever he retains in himself, by the terms of the deed, the power to defeat the conveyance by paying or satisfying the claims provided for, then such a deed is within the act. The distinction would seem to be, that in the latter case the debtor reserves to himself, where the transaction is fraudulent,

the power to defeat the conveyance, by producing a release from the pretended creditor, whenever it becomes necessary or safe for him to do so, and to get back his property, while in the case of an absolute conveyance he could not do so, even though there might have been a fraudulent compact between himself and the trustee for that purpose. The legislature has endeavored to provide for both these cases. The one by the act of 1846, which we are now considering, and the other by the act of 1845, ch. 166, which requires the trustee to give bond. And both of these acts might readily apply to the same deed.

As an insuperable objection to the foregoing views, it has been asked whether the act of 1846 would be extended to a deed of trust for the benefit of a number of creditors, some of whom might be infants of tender years, and therefore not able to make the affidavit? If the grantor reserved to himself the equity of redemption, I have no doubt that it would. This is rather an argument showing the defects of the law, than one supporting a particular construction of it. And this is manifest from the fact, that the same argument would apply with equal force to a *simple mortgage*, to secure the debts of a number of individuals, among whom were infants. In that case the law would clearly apply, although the difficulty of making the affidavits would be equally as great.

It is contended, that unless *all the creditors* named in the deed respectively made the affidavit, the deed would be void as to those even who did. To this view neither, can I assent. The deed in such a case would be *pro tanto*, good as to those who made the affidavit, and void as to the others. I do not wish to be regarded as the *apologist* of this law. Its wisdom and policy are one question, while its construction is another. Our duty relates exclusively to the true construction of the act, and the argument, that it is against public policy and convenience, should have no weight in this court.

In conclusion, I will barely remark, that, in my opinion, all deeds like the present, in the nature of a mortgage, for the purpose of securing specific debts to particular creditors,

Charles *vs.* Clagett.

accompanied with what is always deemed a characteristic mark of a mortgage, *the equity of redemption*, must be verified by an affidavit, to be made by the creditor whose debt is provided for in the deed. Without such an affidavit, the deed would be unavailing.

For the foregoing reasons, it is my opinion, that this judgment ought to be reversed.

LE GRAND, C. J., was of opinion, that the particular instrument in this case required an affidavit, but did not file any reasons for the same.

ECCLESTON, J., delivered the following opinion, in which TUCK, J., concurred.

The question to be decided in this case is, whether the deed of the 1st of May 1851 is void, for want of the oath in regard to the consideration prescribed in the act of 1846, ch. 271?

The deed is between J. A. Grimes and wife, of the first part, Samuel Clagett of the second part, and D. and H. Clagett of the third part. The recital states a debt of $6000, due to D. and H. Clagett by J. A. Grimes, which he is anxious to secure, and then conveys the property in controversy to S. Clagett and his heirs, in trust; so that if within one year from the date of the deed, Grimes should pay the $6000, then the property should be "released and reconveyed to him, his heirs and assigns, discharged of the lien thereby created." But in case of failure in payment within the year, then S. Clagett is authorised to sell the premises, and out of the proceeds to pay "the expenses of the trust," the principal and interest of the debt, and if any surplus remains, the same is to be paid over to Grimes. The deed concludes with a warranty of the premises, from Grimes to S. Clagett, his heirs and assigns.

The act of Assembly provides: "That no deed of mortgage or bill of sale shall be valid and effective, except as against the mortgagor or mortgagors, grantor or grantors, unless there be endorsed thereon an affidavit of the mortgagee or mortgagees, grantee or grantees, sworn to before" certain officers

therein named; "that the consideration set forth in such deed of mortgage or bill of sale, is true and *bona fide*, as therein set forth."

It has been insisted by the appellant's counsel, that inasmuch as the deed in controversy was intended to secure the payment of a debt, and contains what he terms a redemption clause, it is a mortgage, within the meaning of the statute. If this be true, it is difficult to perceive, why is not also a deed conveying all the grantor's property to a trustee, with power to sell after a time limited, and apply the proceeds to the payment of all his debts, if he, the grantor, should fail to pay them by the appointed time, providing for a reconveyance, in case of payment by him within the time. Should the oath of each creditor be necessary under such a deed, if the creditors were numerous, it would, in many instances, be exceedingly difficult, if not impossible, to comply. The same rule which would require the oath of one of such creditors would, of course, embrace all.

It was said in argument that the *cestui que trusts*, and not the trustee, were the mortgagees who were bound to make the oath. According to this theory, under a deed of this description, providing for a large number of creditors, they, being the *cestui que trusts*, would be the mortgagees, and each required to make the affidavit. Some of them might be infants of tender years, not old enough to understand the nature of an oath, or if they were, might be wholly ignorant of any claim due them.

Once admit that the word *mortgage* in this statute includes any other instrument than a purely technical mortgage, under which there is not only the equity of redemption in the mortgagor, but on failure of payment, the mortgagee may recover possession of the premises, take and retain the rents and profits, and has the right of foreclosure, and it will be exceedingly difficult to say what deeds are, or what are not, within the act. It will be no easy task to define the dividing line between mortgages and deeds of trust.

There are instruments which are mortgages only by equita-

ble construction, as may be seen by section 1018 of *2nd Story's Equity.* A vendor's lien is called an equitable mortgage in 4 *Kent's Com.*, 152, *(2nd Ed.)*

In my opinion, the act of 1846 should be construed as including mortgages, technically. such. It is only necessary to mention one class of instruments which have been held in equity to be mortgages, to show, beyond controversy, that the statute could never have been designed to embrace all equitable mortgages. A deed absolute on its face by mistake, if intended to be a mortgage, will be so declared by a court of equity, and I presume it will not be said that if such a deed is without the oath, it will be void under the act. If there are any equitable mortgages not embraced by the statute, why may it not be construed as only applicable to those of a technically legal character? In so doing, much confusion and embarrassment will be avoided, especially in reference to making provision for securing payment to a considerable number of creditors, by deeds, which have been treated and considered as deeds of trust.

In 2 *Story's Equity, sec.* 1013, *note* 2, mortgages and trusts are treated of at some length, and with great ability. Much fault is found with the indiscriminate and improper extent, to which, in some instances, these subjects have been blended, and particularly in applying the term trustee to a mortgagee. The names of mortgagor and mortgagee are considered the most proper to characterize the relation. These are, "characters as well known, and their rights, powers and interests as well settled, as any in the law." This is introduced as the remark of Mr. Justice Buller, in *Birch vs. Wright.* Of course he had reference to a mortgage, technically such, and not one which is so considered, merely by equitable construction.

When we resort to the elementary writers for the definition of a mortgage, it will be seen that on failure in payment, the legal title and the right of possession are in the mortgagee, with the privilege of foreclosing at his pleasure. 2 *Cruise's Dig.*, 81, title *Mortgage, ch.* 1, *sec.* 13; and same title, *ch.* 2, *sec.* 12 of the *4th Amer. Ed.* 2 *Crabb's Law of Real Pro-*

*perty*, secs. 2202 *and* 2209, in the 55*th Law Lib.*  1 *Coote's Law of Mortgage, marg. pages* 1, 319, 324, *note A.*

In the present deed the legal estate is conveyed to the trustee; the *cestui que trusts,* who have been called the mortagees, in no event are entitled to possession, nor have they any right of foreclosure.

Mortages, with power of sale, are treated of at *marg. p.* 124 of 1 *Coote,* in 69 *Law. Lib.,* 170; and this authority was much relied upon by the appellant's counsel, as sustaining his view of the subject.  Where the power of sale is given to a mortgagee himself, or to a third person, merely as a naked power to sell, it need not, nor do I presume that it does, at all, impugn or interfere with the ordinary and usual rights of a mortgagee, which exist in a mortgage, similar, in all other respects to such a deed, except in regard to this power.  But when the estate is conveyed to a third party in fee, in trust to sell, the deed is but a *quasi* or equitable mortgage.

This power of sale is regulated in New York and some other States by statutes.

Our act of 1825, ch. 203, on this subject, particularly the third section, has been insisted upon by the appellant's counsel, as conclusive authority, for holding the present deed to be a mortgage within the meaning of the act of 1846.  So far from agreeing with him, I do not think the law of 1825 has any reference whatever, to a deed of this description.

The third section is: "That no sale of any lands, tenements, or hereditaments, or chattels, made, or to be made, in virtue of this act, by any mortgagee or others thereunto authorized by special power for that purpose, from any person entitled to the equity of redemption therein, shall be defeated to the prejudice of any *bona fide* purchaser thereof, in favor or for the benefit of any person claiming such equity of redemption: *Provided,* that nothing herein contained shall be construed to prejudice any other mortgagee of the same premises, or any part thereof, whose title accrued prior to such sale, or any creditor to whom the mortgaged premises, or any part thereof, were before bound by any judgment at law or

decree in equity: *And provided also,* that nothing herein contained shall operate to secure any such purchaser under any power executed heretofore, or hereafter to be executed for the purposes of such sale, unless the party executing the same be of the age of at least twenty-five years."

According to my opinion, this provision relates to such mortgages as give *special powers* of sale to the mortgagees, or to others: the *special powers* to others meaning merely *naked powers,* and not conveyances of estates, to third persons in trust, to sell.

At one time doubts were entertained as to the validity of sales, under *powers* contained in mortgages, unless made with the concurrence of the mortgagor, or the sanction of a court of equity. And it would seem that some such consideration induced the legislature to pass the act of 1825. Sales made before, as well as those by virtue of the act, are included in it, and made valid against any person claiming the equity of redemption. The first *proviso* in the *third section* exempts from the provisions of the law any other mortgagee and creditor, upon judgment or decree, whose lien binds upon the premises, and existed prior, not to the mortgage under which the sale is made, but simply to the sale itself.

The term *power* is also used in the second *proviso.* And here the purchaser under the power is not protected, whether his purchase be made before or after the law, unless the party executing the deed creating the power be at least twenty-five years of age.

If doubts existed in regard to the validity of sales under powers in mortgages, as above stated, and the act of 1825 was passed on that account, still it does not follow, that there were doubts also, as to the efficacy of a sale under a deed, in which the debtor has conveyed, in fee, his estate, to a third party in trust, to sell and apply the proceeds to the payment of one, several, or all of his creditors, containing a clause of redemption, the creditors having no right of possession, in case of failure to pay. I cannot suppose that such a deed required legislation to give it effect, or that a sale under it

would be limited, or restricted in its influence and operation in favor of a creditor, having a lien created between the date of the deed and the time of sale, in consequence of the first proviso in the third section of the act under consideration. Neither can I conceive, nothwithstanding the second proviso in that section, that a sale made by a trustee, under such a deed, would be void or inoperative to any extent, because the grantor should be under twenty-five years of age at the time of executing the same, provided he was then twenty-one.

In Virginia where deeds of trust to third persons are frequently used, to secure the payment of claims, there never has been any doubt as to the validity of sales under them, because of an equity of redemption. But a sale under a power given to the mortgagee, will not, in that State, bar the equity of redemption, unless the sale is ratified or confirmed by the mortgagor. *Chowning vs. Cox*, 1 *Rand.*, 306. *Taylor's Adm'rs vs. Chowning*, 3 *Leigh*, 665.

The first section of the act of 1846, required the oath to be made before the officer taking the acknowledgment of the deed, and "at the time of the acknowledgment." From this it would seem to be a legitimate inference, that the legislature had in view, such persons only as would be cognizant of, and actually participating in the transaction, and not all those who might be beneficially interested, as creditors or *cestui que trusts*, under a deed of trust, providing for the payment of debts due to a few or to many persons, some of whom might be ignorant of the arrangement. And yet this latter class of persons would be mortgagees, within the meaning of the act, according to the doctrine insisted upon by the appellant, whenever the deed contained a redemption clause. We very frequently meet with such deeds of trust as those just mentioned, in which a large number of creditors are intended to be provided for, when many of them know nothing about it until the affair is consummated, and the deed put on record. But it rarely, if ever happens, that what is commonly called a deed of mortgage, is executed for the benefit of more than

a few creditors, and they generally, if not always, having a knowledge of the contemplated security.

As the oath is required, by the original act of 1846, ch. 271, to be taken when the deed is executed, surely the provision must have been introduced upon the hypothesis, that the instrument in contemplation was such that the parties under it bound to make the affidavit, were such as would be informed of it and might reasonably be expected to attend. This view of the subject strongly confirms my belief that the act, in its provisions relating to mortgages, was designed, exclusively, to apply to those which are strictly and technically such, and not to instruments which are but equitable or quasi mortgages.

No doubt the intention of the legislature in passing the act of 1846, was a good one, but it is, nevertheless, exceedingly doubtful, whether the law is not, in fact, more injurious to the community than beneficial. The multiplication of oaths is, of itself, an evil of no trifling consideration, and when connected with transactions which present strong temptations to the commission of perjury, as those under consideration necessarily do, the evil is greatly increased. Among honest men the law is entirely unnecessary, and in truth can have no effect whatever, except to annoy and give them trouble, in arranging their business; as for instance, when several mortgagees reside in different places very remote from each other. With the dishonest it will have but little effect. A man corrupt enough to participate in an instrument intended to defraud others, would not, in many instances, hesitate about taking the requisite oath. His conscientious scruples would not exercise much influence over him. Nor would fear of punishment for perjury stop him, in any case, where there would be difficulty in proving the fraud. And such transactions are generally gotten up with some degree of plausibility. Even in civil suits it is no easy task to unravel and expose a fraud, and the difficulty would be greatly enhanced in a criminal proceeding. The party knowing this would have little fear of a conviction for perjury. And if the design of effect-

ing a palpable fraud would be stopped, in consequence of the danger of punishment, no great good would be effected by that, for such silly arrangements are rarely attempted, and if they should be, they might very easily be set aside by a civil action.

My brother TUCK concurs in this opinion, and of course, the affirmance of the judgment must follow.

*Judgment affirmed.*