## THE UNION BANK OF MARYLAND *vs.* JOHN D. KERR.

An instrument of writing executed by a debtor to his creditor, assigning certain notes which the assignor had placed in bank for collection, and directing the bank to pay over to the assignee the surplus proceeds of collections, after paying all liabilities due by the assignor to the bank, is not a *mortgage* requiring a stamp under the acts of 1844, ch. 280, and 1845, ch. 193.

Nor is this instrument "a bill, draft or other evidence of debt," requiring a stamp under the act of 1844, ch. 280: if a draft, it was not sold or intended to be put in circulation, because its value was uncertain depending upon contingencies, but was made solely to obtain possession by the party of his own funds, by making them applicable to the payment of his debts, and as such does not require a stamp.

This instrument was a mere order to pay money, the amount of which depended entirely upon future contingencies, and therefore so far uncertain as to render it impossible to fix the *rate of stamp duty* to be paid, and this is an insuperable objection to treating it as a paper requiring a stamp.

A prayer, that if the jury shall find from the evidence "that said assignment was made" by the assignor "fairly and *bona fide*," &c., submits the finding of the execution of the assignment to the jury.

Citizenship is a question of fact simply to be found by the jury in all cases where there is no doubt or dispute, but if there is any dispute as to the legal effect or character of the facts upon which citizenship is to depend, it must be settled by the court, whilst the facts themselves are to be found by the jury.

In all cases either party may ask instructions as to the legal effect of any particular circumstance which may be offered to the jury, and from which the particular matter in controversy is to be deduced

Union Bank vs. Kerr.

A contract executed in this State, between a citizen of this State and a citizen of another State, does not come within the operation of our State insolvent laws.

APPEAL from Baltimore County Court.

*Assumpsit* by the appellee against the appellant, to recover the surplus proceeds of certain notes deposited in the Union Bank for collection, by Edward M. Kerr, after payment of his indebtedness to said bank. The declaration contained all the common counts. Plea *non assumpsit*.

*Exception.* The plaintiff offered in evidence the assignment, which is set out in the opinion of this court, and under which he claimed the fund in question, executed and delivered to him by Edward M. Kerr, on the 21st of August 1846, and produced and shown to the bank on the day following. It was admitted that the bank had in possession a surplus of $574.18, the proceeds of the notes covered by said assignment, after paying all the liabilities of said E. M. Kerr to said bank, which the plaintiff had frequently demanded prior to the institution of this suit, on the 28th of April 1847. The plaintiff also proved that said E. M. Kerr was, at the time said assignment was made, indebted to him upwards of $3000, for money loaned in Philadelphia, and that the plaintiff was further liable as surety and endorser for said Kerr, in unpaid liabilities to an amount exceeding $5000; which liabilities were incurred and contracted in Philadelphia. The plaintiff further proved that at the time of loaning said money and incurring said liabilities, he was, and ever since has been, a citizen of Pensylvania. There was evidence on the part of the defendant, tending to show that the plaintiff was a citizen of Maryland, from some time in July 1846, to the summer of 1848, and there was further proof on the part of the plaintiff, as to his residence in Philadelphia.

The bank further proved that it had been notified by Geo. M. Gill, the receiver of E. M. Kerr & Co., not to pay the fund in controversy to the plaintiff; that at the time said Kerr made the assignment in question, the firm of E. M. Kerr & Co., was indebted to an amount largely exceeding their ability

to pay, and that said Kerr applied for the benefit of the insolvent laws of Maryland, on the 4th of May 1847. Other evidence was given to show that Edward M. Kerr and Moses Potter, did business as partners under the firm of E. M. Kerr & Co., and it was also proved, that the notes from which the funds in the hands of the bank arose, were payable to the order of E. M. Kerr & Co. By agreement, the record in the case of *Kerr vs. Potter*, 6 *Gill*, 604, was to be considered as a part of the record in this case.

The plaintiff then offered a prayer to the effect, that if the jury find that at the time of the execution of the assignment in question, the plaintiff was and is truly and actually a creditor of E. M. Kerr, for money loaned and liabilities incurred, to an amount exceeding the surplus in the hands of the bank, that the contracts and transactions from which this indebtedness arose, were entered into in Philadelphia, and the plaintiff was then a citizen of Pennsylvania, and has so continued to the present time ; and shall further find that said assignment was made by the said Edward M. Kerr to the plaintiff, fairly and *bona fide*, as security in part for the aforesaid indebtedness, then the assignment is valid, even if they may find that said Kerr at the time of making it, was in a condition of actual inability to pay all his debts in full. The defendant then offered ten prayers, in effect as follows :

1st and 2nd. That if the jury find the plaintiff is not *bona fide* entitled to the assignment, and that it was *voluntary* and made without consideration, he cannot recover.

3rd. That if the jury find the assignment, though absolute on its face, was given, received and intended, merely as a security for previous debts and liabilities, then the same is a mortgage, and if executed and delivered in this State is invalid for want of a stamp.

4th, 5th, 6th, 8th, 9th and 10th. These prayers all assail the assignment as void under the insolvent laws of this State; because made with a view, &c., of becoming an insolvent debtor, and with an intent to prefer the plaintiff over the other creditors of said Kerr, or of said E. M. Kerr & Co.,

but omit to notice, or concede the fact, that the plaintiff was a citizen of Pennsylvania.

7th. If the jury find that the plaintiff was a resident of Maryland, at the time the assignment was made, and at the same time the said E. M. Kerr was hopelessly insolvent, and made the same with a view, &c., of becoming an insolvent debtor, and to give the plaintiff an undue and improper preference, then it is a fraud upon the insolvent laws and void.

The court (LE GRAND, A. J.,) granted the plaintiff's prayer, and also the *first*, *second* and *seventh* prayers of the defendant, but rejected the defendant's other prayers. To this ruling the defendant excepted, and the verdict and judgment being in favor of the plaintiff, appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*S. T. Wallis* and *Thomas G. Pratt* for the appellant, argued:

1st. That the assignment under which the appellee claims is in point of law a mortgage, and consequently void, being without a stamp, as required by the act of 1845, ch. 193. This act, unlike that of 1846, ch. 271, which came under the consideration of this court in the case of *Charles vs. Clagett*, 3 *Md. Rep.*, 82, is a *revenue* law, to be construed with liberality by the courts and with the view of giving effect to the object of the legislature. 9 *Gill*, 97, *State vs. Milburn*. Its policy was to aid in paying the debts of the State, and provides that certain instruments shall not be used in evidence unless they have a stamp. The legislature meant to go behind the instrument and reach the *debt* secured, because they provide a scale for the imposition of a stamp; the thing to be taxed is the *debt*. If therefore this instrument does not technically answer to the description of a *mortgage*, still, if its object was to secure a *debt* by a lien on real or personal property, it comes within the policy of the law. 3 *Md. Rep.*, 82, 87, 88, 89. If the instrument is executed and contains all the requisites of a mortgage of *choses in action*, then it is

clearly within the *strict* construction adopted by Judge Eccle-
ston, in the case of *Charles vs. Clagett.* See also the opinion
of Judge Mason, in *Furlong & Miller, vs. Edwards,* 3 *Md.
Rep.,* 116, 117. So far as personal property is concerned, it
is not necessary that a technical mortgage should be under seal.
2 *Hilliard on Mortgages,* 151, 154. 12 *New Hamp.,* 205, 234,
*Dispatch Line of Packets vs. Bellamy Manf. Co.* 11 *Eng. Law
& Eq. Rep.,* 584, *Flory vs. Denny.* 7 *Metcalf,* 244, *Milton
vs. Mosher.* In England an assignment of a *chose in action* may
be by parol, (2 *Coote on Mortgage,* 234, in 59 *Law Lib.,* 282,)
but in this State we are governed by the act of 1821, ch. 59,
which, so far as the assignment of *choses in action* is concerned,
only requires the execution of an instrument *in writing* and
*bona fide.* But in this case the prayer of the appellee assumes
that this assignment was given as a *security for a preexisting
debt,* and it comes therefore clearly within the policy of the act
of 1845. As to the construction given by the English courts
to their stamp laws, see 31 *Eng. C. L. Rep.,* 180, *Wise vs.
Charlton.* 13 *Ves.,* 114, *Hiern vs. Mill.* 6 *Hare,* 261, *Par-
sons vs. Middleton.*

2nd. But if not a mortgage, it is, at all events, a draft or
some *other evidence of debt* required to be stamped under the
act of 1844, ch. 280. The purpose of this law was, to cover
every instrument which could be introduced into the courts
as an *evidence of debt.* Now what is this paper? It is in
substance a draft in favor of the appellee upon the appellant,
for so much of the funds of the drawer as might thereafter
come to the hands of the drawee beyond the amount necessary
to pay what was then due to the drawee. That such an
order, enabling a *third party* to get the funds of the drawer,
would be liable to a stamp in England, is clear from the case
of *Parsons vs. Middleton,* 6 *Hare,* 261. See also *Coote on
Mortgages,* 233, in 59 *Law Lib.,* 281. It is true the *words*
of the statute of 55 *Geo.* 3, construed in that case, are not iden-
tical with those of the act of 1844; the words of the former
are, "bill, draft or order;" of the latter, "bond, obligation,
single bill, promissory note, foreign or inland bills of exchange,

or other evidence of debt." But it is submitted that the pro-
visions of the English act, "bill, draft or order," are included
in the terms of our act, "foreign or inland bills of exchange,"
or if not that, it is incontrovertible that every "bill, draft or
order" must be an evidence of debt, and consequently included
by the provisions of our act, "other evidence of debt." Is not
this paper an evidence of debt? What office has it performed
in this case? How has the plaintiff below recovered, except
solely and exclusively by using this paper as the evidence of
indebtedness of the defendant to him? It is his cause of action.
In the case of Burton vs. The State, 3 Gill, 13, the court say:
"An order or draft not sold or intended to be put in circu-
lation, but made solely to obtain possession by the party of
his own funds, does not require a stamp." It of course follows
that every order which is sold or put in circulation, or which
is not intended by the party solely to obtain the possession of
his own funds, must be stamped. Now did Kerr, when he
executed this order, intend to make the appellee his mere
agent? Was it his design solely to obtain possession of his
own funds? If it was, then the assignment was a fraud; the
rights of foreign creditors are not involved and the insolvent
trustee is entitled to the fund. But this order is not for the
payment of funds then in the hands of the drawee, but for the
payment of a fund which should thereafter come to hand. It
is submitted that the universal construction of the act of 1844
and the practice under it has been to consider none other than
sight orders exempt from its operation. When a farmer or
planter has his produce unsold in the hands of his agent, and
desires to raise money by an order payable at sixty days, or
any other time, either fixed or contingent, after date, no
diversity of opinion has existed that such an order must be
stamped, and we are unable to see a distinction between the
order in the case supposed and that in the paper under con-
sideration.

3rd. By the decision in Alexander vs. Ghiselin, 5 Gill, 181,
all the property of the insolvent, irrespective of the liens of
domestic creditors, is transferred to the insolvent trustee, so

that a mortgagee, after the petition of the mortgagor, cannot foreclose his mortgage, or if he had obtained a decree the trustee cannot sell; and even where a citizen creditor has obtained judgment and levied his execution, the property levied on will, by the petition of the debtor, be taken from the hands of the sheriff and vested in the insolvent trustee. By the decision in the case of *Poe vs. Duck*, 5 *Md. Rep.*, 1, the State insolvent laws apply "to all contracts made within the State between citizens of the State, but not to contracts made in the State with a citizen of another State, nor to contracts not made within the State." The result of these two decisions is to deprive the domestic creditor of all power to proceed against the property of his debtor, whilst the foreign creditor is untrammelled and at liberty to collect his debt, either through the federal or State courts. These decisions and their effect are not referred to with the hope that the court will in this case review the decision of *Alexander vs. Ghiselin*, nor even with a view of suggesting the inquiry, whether an insolvent law which would produce such a result might not also be inconsistent, as to the domestic creditor, with that clause of the constitution of the United States which declares that no State shall pass a law which violates the obligation of a contract. Our object is to enforce this position, that in such a case as this, where equity, equality and justice would require the fund in controversy to go to the insolvent trustee to be distributed amongst all the creditors, the court will be disposed to avail itself of any legal ground to prevent its going exclusively to this foreign creditor, the appellee.

4th. The appellee's prayer should have been rejected, because it does not require the jury to find, as matters of fact, the existence and execution of the assignment, but assumes the fact of such existence and execution, and takes them away from the jury altogether. The language is: "If the jury find from the evidence in the cause that the plaintiff in this action, *at the time of the execution of the assignment offered in evidence by the plaintiff*, was actually and truly a creditor," &c. This *assumes* the existence and execution of

the assignment. 3 *Md. Rep.*, 294, *Lewis vs. Kramer & Rahn.* *Ibid.*, 161, *Gaither vs. Martin.* 4 *Do.*, 252, *Balto. and Susquehanna Railroad Co., vs. Woodruff.* *Ibid.*, 478, 493, *Ellicott vs. Peterson.* 2 *Do.*, 75, *Brown vs. Ellicott.*

5th. But again, this prayer is defective for another reason. It submits to the jury a question of law, viz: what constitutes citizenship? There can be no doubt that the determination of *what facts* are necessary to concur to constitute citizenship is a question of law. The true course was for the court to instruct the jury, that if they find such and such facts, then the party is a citizen, otherwise not. Here there was conflicting testimony upon the subject of the citizenship of the plaintiff, and the court, without instructing the jury what facts they must find to make him a citizen, *instructs the jury* to decide the legal question of citizenship.

*William Schley* for the appellee.

The appellant's counsel insists, that this instrument is *a mortgage*, or if not it is an instrument, nevertheless, which, under the act of 1844, ch. 280, requires a stamp. On looking at the act of 1844, it will be seen what sort of instruments require a stamp. An assignment of a debt is not one. The assignment of a bill obligatory, promissory note, or other *chose in action*, does not require a stamp. The paper, in this case, is a mere transfer by the assignor of the margin of certain collaterals, which he had deposited in the bank. It is not *a mortgage*. On its face it is absolute and unconditional, without words of defeasance and without any clause of redemption. In the language of Lord Thurlow, in *Yeates vs. Groves*, 1 *Ves. Jr.*, 281, it is "a direction by a man to pay part of his money to another for a foregone valuable consideration. If he could transfer, he has done it; and it being his own money he could transfer. The transfer was actually made. The order fixed the money the moment it was shown." It might as well be insisted, that the transfer of a promissory note, by endorsement, required the efficacy of a stamp as parcel of the endorsement, to give a right to the endorsee, as to

say that a stamp is necessary in case of an assignment to give right to the assignee. Our revenue laws do not apply to such an instrument, and the cases cited do not justify such a conclusion. If our act of 1844, was a transcript of the statute of 55 *George*, 3, *ch.* 184, the case of *Parsons vs. Middleton*, would be good authority to show that the words, as used in that statute, "bill, draft or order," embrace such an instrument as was under consideration in that case. But these words, "bill, draft or order," are not found in our act of 1844; and the assignment in this case is wholly unlike the instrument in that, which was such as could be negotiated by mere endorsement. That instrument had all the properties of a formal bill of exchange, except that *the specific sum* was to be paid out of *a balance.* In that case it was conceded, that if the instrument could be considered a mere assignment, no stamp would have been necessary. The reasoning of both the learned judges, whose opinions were filed in the case of *Charles vs. Clagett*, 3 *Md. Rep.*, 82, is against the notion that this paper is a mortgage, or requires any stamp. There is no redemption clause ; and it has none of the attributes of a mortgage. We must look to our own laws, for the purpose of ascertaining what our legislature meant by the term "mortgage :" they meant an instrument embracing real or personal property, of which the party of the first part retained possession ; an instrument *under seal, acknowledged* as a deed, and that might be *recorded.* And if the instrument be not a mortgage, how is it within the acts? It is not "*a bond,* or obligation, single bill or promissory note, or bill of exchange, or other evidence of debt." No action could be maintained on the assignment *as the cause of action.* The plaintiff sued for money had and received to his use ; and this assignment was a mere instrument of evidence to show the transfer to him ; and this, with notice to the defendant, gave him a right of action to the money, the surplus collected by defendant.

The 3rd point of the appellant is fully disposed of by the case of *Poe vs. Duck*, 5 *Md. Rep.*, 1.

The 4th presents an objection to the phraseology of the

plaintiff's prayer, that it ought to have been left to the jury as an open question, whether the assignment was executed or not. Of course, the objection assumes that the jury, upon the evidence in the cause, might have found, and could properly have found, that the assignment was not executed to the plaintiff. The cases cited in support of the objection maintain, very decidedly, that it is the exclusive province of the jury to decide every question of fact, which is open, upon the evidence. But the cases do not apply to a case like this where there is no question to be submitted. Here the fact was not only not controverted, but was expressly admitted, as appears by the record. Besides this express admission, all the prayers of the defendant concede the execution and existence of the assignment. Three of these were granted, and in each the execution of the assignment is admitted in the most unequivocal terms. It would certainly be calculated to take his adversary by surprise, if a party were able successfully to make such an objection, *on appeal*, in a case where the point was not suggested below, and where, as in this case, there was an admission of the fact at the trial, and an unequivocal concession of it in the prayers of the appellant.

The 5th point presents the objection, (as I understand it,) that the prayer was defective in not defining, as a part of the prayer, what would constitute a party *a citizen*. In the defendant's 8th prayer, similar language is used; and his 7th, (which was granted,) showed, that if the plaintiff was *a resident* of Maryland, he would not be exempt. Besides this, the prayer was warranted by the evidence; and there could have been no uncertainty, as the jury were instructed by his 7th prayer as favorably for the defendant as could have been asked. But if there was any material point in this matter, the defendant might, by further prayers, have asked and obtained instructions; and having presented the point below, it would properly have been before the court. But I do not concede that a party is bound, in his prayers, to define every word that is used. If a party asks an instruction, for instance, based on the finding that a paper was *executed, acknowledged*

and *delivered* as a *deed,* I deny that he is bound to define, in his prayer, what constitutes execution, how *acknowledgment* is to be made, what is essential to a *delivery,* and what manner of instrument is a deed.   If, on the hypothesis that a party is a citizen of another State, certain legal consequences follow, it is sufficient in stating the hypothesis to use the word "citizen" without more: the other party having the right to contend, that in fact or in law the party upon the proof was not a citizen.   If this new particularity be required in the language of prayers, then dictionaries of legal terms will be more important than the reports of decisions.

MASON, J., delivered the opinion of this court.

In this case the Union Bank is but a mere nominal party. It had received certain notes or obligations from E. M. Kerr, to meet his liability to that bank, and now holds, after paying its own debt, a surplus of $574, subject to the order or demand of any one legally entitled to claim it.   John D. Kerr the plaintiff, (now appellee,) claims the fund, and this action was instituted to recover it.   To support his claim, the plaintiff offered in evidence the following paper or instrument of writing, to wit:

"For value received, I assign to John D. Kerr, all the notes now deposited for collection in the Union Bank of Maryland, subject nevertheless to the right of the said Union Bank, to appropriate so much of the proceeds of said collections, as may be requisite and sufficient to pay in full the note of Talbott Jones and Company, in my favor and by me endorsed, dated 14th March last, at six months after date, for $1341.82; and I hereby furthermore authorize and direct said Union Bank to pay over to said John D. Kerr, the surplus of said proceeds, or, if so required by him to hand over to him whatever notes may remain unpaid at the time of such request, on payment to said bank of the balance, if any, that may then be due to said bank on said note; also the said note of Talbott Jones and Company, I hereby assign to said John D.

Kerr, on its payment to said bank, if paid out of said col-lections, or by said John D. Kerr, in whole or in part.

Signed,                    EDWARD M. KERR.

"*Baltimore, August* 21*st*, 1846.

"Presented to Union Bank Maryland, August 22nd, 1846.

R. MICKLE, Cashier.

"The said notes are held by the Union Bank of Maryland, as collateral for all liabilities of E. M. Kerr to the bank.

R. M., Cash."

It is not denied, that at the time this instrument of writing was executed, E. M. Kerr was insolvent, and has since taken the benefit of the insolvent laws of this State.

The validity of this paper, and the right of the plaintiff to maintain his action upon the case as made by the record, are assailed upon several grounds by the appellant.

. One of the points of objection is, that though the plaintiff may have been a citizen of a foreign State, still if the paper was executed in this State, the contract is thereby brought within the operation of our insolvent laws, and having been made in prejudice of those laws, is therefore void, and that the title to the money vests in the trustee. The case of *Poe vs. Duck*, 5 *Md. Rep.*, 1, decides directly the reverse, and is therefore an answer to this objection.

Another objection to this paper is, that it was in point of law a mortgage, and as such was void, not having been stamped as required by the acts of 1844, ch. 280, and 1845, ch. 193. We cannot discover in this instrument any of the peculiarities or incidents of a mortgage. It is upon its face absolute and unconditional, without any words of defeasance, and without the redemption clause. It is wholly unlike the deed in *Charles vs. Clagett*, 3 *Md. Rep.*, 82, which was a con-veyance of property to secure a debt, the surplus, if any, to result to the grantor. The present is an unconditional assignment of notes, more properly of money, for a valuable consideration.

It is further urged by the appellants' counsel, with more force, we admit, that the present paper if not a mortgage is nevertheless a bill, draft, or some other *evidence of debt*, which

requires a stamp *under the law above referred to.* *If it be* conceded that it is a draft or bill, yet clearly it must fall within the exception to the law, pointed out by the Court of Appeals, in the case of *Burton vs. The State,* 3 *Gill,* 1. It was *not sold,* nor was it intended to be *put in circulation,* for the reason that its value was uncertain, depending upon contingencies. On the other hand, we can regard it in no other light, if it be a draft at all, than as one made solely to obtain possession, by the party, of his own funds, by making them applicable to the payment of his debts, and as such not requiring a stamp. The present is unlike the case of a farmer or planter, put by the appellants' counsel, who draws a draft, for a specific sum, on time, upon his factor, upon the faith of produce either in the latter's possession, or to be placed there. In such a case the paper would become a debt or obligation, negotiable in its character, and therefore liable to be put in circulation, and as such subject to a stamp duty. If the counsel had varied his illustration, by supposing that the farmer had drawn an order upon his merchant, to pay over to a particular person the proceeds of the sales of his produce as soon as they were realized, without naming any amount or time, it would more resemble the present transaction. In such a case, it could hardly be contended, that a stamp would be necessary.

There is still another insuperable objection to treating this paper as one requiring a stamp, either as a mortgage or a bill: and that arises from the impossibility of ascertaining the denomination of the stamp required. As we have said, this was a mere order to pay money, the amount of which depended entirely upon future contingencies, and was therefore so far uncertain as to render it impossible to fix the rate of stamp duty to be paid.

The next alleged objection to the appellee's case is, that in his prayer, which the court below granted, he *assumes* the fact, that the paper was duly executed and delivered by E. M. Kerr, whereas the finding of that fact should have been submitted to the jury.

We do not think this objection is well taken, because the finding of the execution of the paper, was in point of fact submitted to the jury. The language of the prayer upon this point is, and if the jury "shall further find from the evidence that said assignment *was made by said E. M. Kerr, fairly and bona-fide,*" &c.

The next and last objection, in its character is the opposite of the one we have just considered. This last is based upon the ground, that the province of the court has been invaded, by submitting to the jury a question of law, while the other sought to vindicate the rights of the jury from illegal encroachment by the court. It is supposed, that the matter of citizenship was a question of law, and ought to have been defined by the court. This may or may not be true. *Prima facie* it is not true. In all cases of undoubted and undisputed citizenship, and generally citizenship is of this character, no question of law could properly arise, and in such cases it may be said to be a question of fact simply to be found by the jury. Where, however, there is any dispute as to the legal effect or character, of the facts upon which the citizenship is to depend, that dispute must be settled by the court, while the facts themselves are to be found by the jury. In all cases either party, if he thinks proper, may ask instructions of the court, as to the legal effect of any particular circumstance which may be offered to the jury, and from which the particular matter in controversy is to be deduced. This view is fully sanctioned by the case of *Atwell vs. Miller & Mayhew,* 6 *Md. Rep.,* 10.

Finding no error in the ruling of the court below, upon the several questions presented by this record, we must affirm the judgment.

*Judgment affirmed.*